# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TRAVIS DELANEY WILLIAMS,

    Plaintiff,

  v.                                              Case No. 19-C-1159

ELLEFSON, WEBSTER,
BRADLEY FEDIE,
ROTH, LAXTON,
RUDIE, SAYLOR,
JOLINDA WATERMAN,
JULIA PAYNE,
NURSE JANE DOE, and
JOHN DOES,

    Defendants.

## SCREENING ORDER

Plaintiff Travis Delaney Williams, an inmate confined at the Wisconsin Secure Program Facility, filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendants violated his rights under federal and state law. This order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**A. Motion for Leave to Proceed without Prepaying the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28

U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On August 30, 2019, the court waived Plaintiff's obligation to pay an initial partial filing fee. ECF No. 8. The court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. He must pay the entire $350 filing fee over time in the manner explained at the end of this order.

**B. Screening the Complaint**

**1. Federal Screening Standard**

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2. Plaintiff's Allegations

Plaintiff alleges that, on February 24, 2019, defendant correctional officer Ellefson gave him another inmate's medication. After taking the medication, Plaintiff asked to see the medication cards Ellefson had been looking at. Plaintiff, whose first name is *Travis*, noticed that Ellefson had given him *Derek* Williams' medication. Plaintiff notified Ellefson of his error, to which Ellefson allegedly responded, "Ahh man." ECF No. 1 at 6. Plaintiff allegedly explained to Ellefson that one of the medications he gave Plaintiff was Trazadone and that Plaintiff had been weaning himself off of Trazadone because it gives him bad stomach aches and occasionally causes stomach bleeding. Plaintiff demanded to see a nurse. Plaintiff states that Ellefson ignored him.

According to Plaintiff, Ellefson called defendant correctional officer Laxton, and the two began to whisper to one another while thumbing through the inmate medication cards. Plaintiff allegedly overheard Laxton instruct Ellefson on how to cover up his mistake. Plaintiff asserts that he immediately pressed his call button and spoke to defendant sergeant Saylor. After Plaintiff told

Saylor what was going on and explained that he needed to see a nurse, Saylor allegedly said he would look into it.

Plaintiff explains that, as he was waiting, he "started getting a real bad case of acid reflux." ECF No. 1 at 7. Plaintiff asserts that he has "GERD very bad," which he treats with five different medications. *Id.* According to Plaintiff, the condition causes him to "regurgitate his food or vomit," which burns his throat, and can cause bloody stool. *Id.* Plaintiff asserts that he began to vomit up small chunks of food with spots of blood. He took some TUMS, hoping to counteract the burning sensation, but it did not work. According to Plaintiff, his condition worsened. He began to vomit up larger chunks of food with more blood. Plaintiff states that he pushed his call button and again explained his situation to Saylor and asked for a nurse. He allegedly told Saylor the TUMS were not working. Saylor allegedly informed Plaintiff that he talked to the nurse and would write an incident report documenting what had happened.

Plaintiff asserts that Saylor did not contact the nurse a second time; instead, he sent defendant correctional officer Rudie to Plaintiff's cell to deliver a bottle of TUMS. Plaintiff told Rudie he already had TUMS and asked him to call a nurse. Plaintiff states that Rudie did not contact a nurse; instead, two hours later, he brought a bottle of liquid antacid to Plaintiff. Plaintiff told Rudie he already had liquid antacid. He explained that he was bleeding when he regurgitated his food and there was blood in his stool. He allegedly asked Rudie to give him something to put his stool and spit in so he could show the nurse. Rudie allegedly denied Plaintiff's request.

In response, Williams placed a legal envelope in his cell door window, turned off his light, called Rudie a clown, and told him to call a nurse. Rudie allegedly told Plaintiff twice to uncover

his window. Plaintiff told Rudie the window was not fully covered and that he should go get a nurse. Rudie left.

After an hour, Plaintiff again pressed his call button to talk to Saylor, who told him he had contacted a nurse and she said she would come by Plaintiff's cell after she handed out medication, but her shift had ended and she went home. Plaintiff said he knew how to get someone to come to his cell. He then fully covered his cell door window. Rudie came to Plaintiff's cell and called his name, but Plaintiff refused to answer. Laxton then came to Plaintiff's cell, and Plaintiff told him to get a nurse. Rudie came back and told Plaintiff to uncover his window. Again, Plaintiff refused to answer. Plaintiff explains that he heard Rudie put a key in the top trapdoor in his cell. Plaintiff told Rudie that, as soon as the trapdoor opens, Plaintiff would spit blood in his face. Plaintiff again told Rudie to get him a nurse.

Plaintiff explains that, at 9:30 p.m., count was in effect and prison rules require correctional officers to visually account for every inmate. Plaintiff asserts that, by keeping his window covered, he held up count across the entire state. According to Plaintiff, defendant lieutenant Fedie came to his cell and yelled at Plaintiff to uncover his window. Plaintiff asserts that, at that time, only half of his window was covered. He states that he stood up to uncover the rest of the window when he heard Fedie order an unidentified officer to open the trapdoor. Fedie then allegedly sprayed OC spray in Plaintiff's cell. Plaintiff alleges the burst of spay lasted more than three seconds. Plaintiff states that he began coughing and spitting up blood. He asserts that blood was coming out of his mouth and nose.

After about five minutes, Fedie yelled at Plaintiff to put his hands through the trap to be cuffed. Plaintiff explains that he is on a soft cuff restriction because his left arm is deformed. In

spite of this, Fedie cuffed both of Plaintiff's arms behind his back, which allegedly caused Plaintiff significant pain. Fedie also refused to put Plaintiff in his wheelchair and instead fast-walked/dragged Plaintiff to the segregation unit.

Plaintiff was put in a holding cell and told to strip. Plaintiff explains that he handed his back brace, knee braces, and ankle braces to defendant correctional officer Roth. Roth then allegedly told Plaintiff to lift his testicles, pull his ears, and open his mouth. Plaintiff explains that he was steadying himself on the door while he did that. According to Plaintiff, right before Roth handed him his segregation clothes, Fedie came in and started to threaten Plaintiff. He allegedly performed the same search Roth had just performed. He also ordered Plaintiff to stand in the middle of the room and spread his butt cheeks. Plaintiff explains that he uses a four-wheeled walker and wheelchair. According to Plaintiff, when he tried to spread his butt cheeks, he fell forehead-first on to the cement floor and scraped his forehead and hand. Plaintiff asserts that he asked to see a nurse, but Fedie again ordered him to stand up and spread his butt cheeks; Plaintiff asserts that he fell again. Plaintiff states that Fedie and Roth both laughed and walked away.

Plaintiff states that he passed out and urinated and defecated on the floor. He explains that, after he awoke, he crawled to the door and started banging on it, asking for help. Plaintiff states that he yelled that he had passed out; that his head, chest, and stomach were hurting; and that he had lost control of his bowels. Ellefson, Webster, and two unidentified officers allegedly ignored him. Plaintiff asserts that he knew no one was going to help him, so he picked up his feces and threw it out his trapdoor toward the sergeants' cage about ten feet away. The officers allegedly did not respond.

Plaintiff states that he suffered for more than two hours before defendant nurse Waterman arrived to examine him. Plaintiff was made to wear a spit mask because of his threats to spit on people. According to Plaintiff, Waterman did not examine his forehead because of the mask, she ignored the swelling and blood on his hand, and called a lump near his finger a callous. Waterman allegedly provided a Pepto-Bismol tablet for Plaintiff's stomach pains and regurgitation. Plaintiff allegedly explained that it would not help. He stated that he had had these problems for thirty years and that, usually, he has to go to the hospital, where he gets a thick white medication and an antacid. Plaintiff asserts that Waterman refused to send him to the hospital, refused to address his chest pains from the OC spray, and refused to look at the blood in his feces, even though his bloody feces were all over the wall.

Plaintiff spent twenty days in segregation, and, after a disciplinary hearing, received an additional thirty days of cell confinement. Plaintiff asserts that he tried to write inmate complaints, but defendant Julia Payne either rejected every complaint, claiming they contained more than one issue, or she purposely mischaracterized the issues Plaintiff was complaining about. He states that she routinely treats inmate complaints in this manner. He also asserts that, despite his preservation requests, video footage of the incident was destroyed.

**3. Analysis**

To state an excessive-force claim, a plaintiff must allege that an officer applied force maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to maintain or restore discipline. *United States v. Waldman*, 835 F.3d 751, 755 (7th Cir. 2016) (internal quotation marks and citation omitted). To state a deliberate-indifference claim, a plaintiff must allege that prison officials intentionally disregarded a known, objectively serious medical

condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). Both claims arise under the Eighth Amendment.

The court will allow Plaintiff to proceed on Eighth Amendment claims against Fedie based on his allegations that: (1) Fedie sprayed an excessive amount of OC spray into his cell even though Plaintiff was in the process of complying with Fedie's order to uncover his window; (2) Fedie ignored Plaintiff's soft cuff restriction and physical disabilities and allegedly handcuffed Plaintiff behind his back and fast-walked/dragged him down a hallway; and (3) Fedie ordered Plaintiff to stand naked and unsupported in the middle of the room for a strip search that had already been performed, resulting in Plaintiff twice falling face-first onto the cement. The court will also allow Plaintiff to proceed on an Eighth Amendment claim against Roth based on Plaintiff's allegations that Roth watched and laughed as Plaintiff twice fell to the floor while attempting to comply with Fedie's orders.

Plaintiff may also proceed on Eighth Amendment claims against Ellefson, Webster, and the two John Doe officers who allegedly ignored Plaintiff's calls for help after he told them he had hit his head, passed out, lost control of his bowels, and had chest and stomach pains. The court also will allow Plaintiff to proceed against Waterman and the unidentified nurse who went home without examining Plaintiff. "A delay in treatment may show deliberate indifference if it exacerbated [a plaintiff's] injury or unnecessarily prolonged his pain." *Perez*, 792 F.3d at 777–78. Although Plaintiff alleges that he has suffered from symptoms associated with GERD for decades, Plaintiff indicates that there is medication available that can help alleviate his symptoms when they become particularly severe. Waterman and the unidentified nurse allegedly delayed examining Plaintiff and, in the case of Waterman, allegedly denied him adequate treatment and medication. As a result,

Plaintiff alleges that he coughed up blood for hours and experienced severe chest and stomach pain. These allegations are sufficient for him to proceed on a deliberate indifference claim.

Finally, the court will allow Plaintiff to proceed on a deliberate indifference claim against inmate complaint examiner Payne based on his allegations that she repeatedly rejected his grievances about this incident. Generally, an inmate complaint examiner denying or rejecting an inmate grievance will not give rise to a constitutional claim because doing so does not contribute to or cause the alleged constitutional violation. However, the Seventh Circuit has observed that allegations that an inmate complaint examiner refuses to do her job, leaving inmates "to face risks that could be averted by faithful implementation of the grievance machinery" can be sufficient to state a claim. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Accordingly, the court will allow Plaintiff to proceed based on his allegations that Payne routinely rejects inmate grievances and/or mischaracterizes the issues in their grievances.

Plaintiff does not, however, state a constitutional claim against Ellefson based on his allegations that Ellefson gave him the medication of an inmate with the same last name. Typically, a plaintiff will not state a deliberate indifference claim if he alleges that a defendant dispensed the wrong medication on a single occasion. *See Shanklin v. St. Clair County Jail, Wexford*, Case No. 17-cv-1151, 2018 WL 839615, at *2–3 (S.D. Ill. Feb. 13, 2018) (citing *Gill v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004)). This is because negligence or even gross negligence is not actionable under § 1983. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). The only reasonable inference from Plaintiff's allegations is that Ellefson was careless or negligent, which is insufficient for Plaintiff to proceed against him.

Plaintiff also fails to state a claim based on his allegations that Ellefson and Laxton whispered about how Ellefson should explain what happened. Plaintiff explains that, when he overheard them talking, he contacted Saylor, who looked in to the matter and eventually called a nurse. Accordingly, Plaintiff suffered no harm from Ellefson and Laxton's attempt to manage the situation. Nor will the court allow Plaintiff to proceed on a claim against Saylor. Plaintiff alleges that Saylor responded each time Plaintiff pressed his emergency call button, he contacted a nurse at Plaintiff's request, and he directed Rudie to bring Plaintiff TUMS and a liquid antacid to help address Plaintiff's GERD symptoms. Saylor was allegedly told by the nurse that she would stop by Plaintiff's cell after she handed out medication; Saylor was not responsible for the nurse's decision not to do so.

Plaintiff also fails to state a claim against Rudie. Rudie allegedly brought Plaintiff TUMS and a liquid antacid to help address Plaintiff's symptoms. In response, Plaintiff called him names, covered his window, ignored his orders, and threatened to spit blood in his face. Rudie's restraint in the face of Plaintiff's actions is the opposite of deliberate indifference. Plaintiff asserts that Rudie refused to get a nurse or provide him with containers he could use to collect stool and spit samples; however, Saylor had contacted a nurse at Plaintiff's request, so Rudie's failure to do so does not demonstrate deliberate indifference to Plaintiff's medical needs, and it was up to the nurse to decide whether samples were necessary.

Plaintiff also fails to state a claim against the John Doe officer who opened the trapdoor, through which Fedie sprayed the OC spray. At the time he opened the trapdoor, Plaintiff had been defying multiple officers' orders for a long period of time. Plaintiff asserts that he then started to comply with Fedie's orders, but Fedie sprayed him anyway. Presumably Plaintiff started to comply

because the trapdoor opened and Plaintiff anticipated what would happen next. In any event, the officer did not harm Plaintiff by opening the trapdoor, and he will not be held liable for the alleged misconduct of Fedie.

Finally, Plaintiff seeks to pursue claims that "are novel and complex issues of state law." ECF No. 1 at 3. Specifically, he cites Wis. Stat. §§ 940.285 (Abuse of Individuals at Risk), 946.12 (Misconduct in Public Office), 939.63 (Penalties for Use of Dangerous Weapons), and 940.19 (Battery). The court will not exercise supplemental jurisdiction as Plaintiff requests. "Courts seldom imply a private right of action where none appears in the statute, for a strong presumption exists against [their] creation." *Smith v. Gerber*, 64 F. Supp. 2d 784, 786 (N.D. Ill. 1999) (citations omitted). That presumption is even stronger when the statute in question is criminal. *Id.* A "statute proscribing particular conduct but not identifying specific beneficiaries—for example, a statute forbidding murder or burglary—generally is enforced by public prosecutors, with private enforcement only if the statute creates an express right of action." *Id.* (citations omitted). The statutes Plaintiff cites are criminal statutes, and the only remedies they provide are criminal penalties. Accordingly, the court finds that they do not give rise to a private civil remedy.

In summary, Plaintiff states claims against Ellefson, Fedie, Webster, Roth, Waterman, Payne, the Jane Doe nurse, and two John Doe officers; however, he does not state claims against Laxton, Rudie, and one John Doe officer. Because Plaintiff is suing Doe defendants, he will have to use discovery (interrogatories and/or document requests) to learn their names. Once Plaintiff learns their names, he must file a motion to substitute their names for the Doe placeholders. Plaintiff may not serve discovery requests until after the named defendants respond to his complaint and after the court enters a scheduling order setting deadlines for discovery and the filing of dispositive motions.

The named defendants do not have to respond to discovery requests served before the court enters a scheduling order.

**C. Conclusion**

**THEREFORE, IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Ellefson, Fedie, Webster, Roth, Waterman, and Payne. It is **ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $350 filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> Jefferson Court Building
> 125 S. Jefferson St., Rm. 102
> Green Bay, WI 54301-4541

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this __1st__ day of October, 2019.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court - WIED

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.