**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

TRAVIS DELANEY WILLIAMS,

    Plaintiff,

v.                                                                                    Case No. 19-C-1159

ZACHARY ELLEFSON, et al.,

    Defendants.

# ORDER

Plaintiff Travis Delaney Williams, who is representing himself, is proceeding on claims under 42 U.S.C. § 1983. The Prison Litigation Reform Act (PLRA) applies to this case because Williams was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). That law requires courts to screen complaints filed by prisoners to identify cognizable claims; courts must also dismiss any potion of a complaint that is malicious, frivolous, or fails to state a claim.

On October 1, 2019, the court screened Williams' complaint and allowed him to proceed on Eighth Amendment claims against Ellefson, Fedie, Webster, Roth, Waterman, Payne, a Jane Doe nurse, and two John Doe officers. However, the court found that Williams' allegations that Ellefson gave him the wrong medication, his allegations that Laxton did not call a nurse when Williams told him to, his allegations that Rudie did not call a nurse and was otherwise deliberately indifferent to his GERD symptoms, and his allegations that a Doe officer opened Williams' trap door, through which Fedie sprayed OC spray, all failed to state a claim. A couple of weeks after the court screened his complaint, Williams filed a motion for reconsideration. He also filed a motion to

substitute the names of the John Doe officers. Williams later filed a motion for the court to order service of his complaint on the identified officers. This order resolves Williams' motions.

1. *Motion for Reconsideration*

Williams first argues that he should be allowed to proceed on a deliberate-indifference claim against Ellefson, who allegedly gave Williams the wrong medication, because he has received the wrong medication in the past. Williams does not clarify whether it was Ellefson who distributed the wrong medication to him in the past (his declaration implies it was not). Regardless, those allegations are not in the complaint. In his complaint, Williams alleges that Ellefson gave him the medication of an inmate with the same last name and that, when Williams alerted him to what he had done, Ellefson responded by saying, "Ahhhh, man." The only reasonable inference from these allegations is that Ellefson made a mistake. As the court explained to Williams in the screening order, negligence or even gross negligence is not actionable under § 1983. Williams does not state a deliberate-indifference claim against Ellefson on these allegations.

Williams also argues that he should be allowed to proceed on a deliberate-indifference claim against Ellefson and Laxton based on his allegations that they failed to call a nurse after he told them that Trazadone gives him bad stomach aches and sometimes causes stomach bleeding. In his complaint, Williams acknowledges that he had a prescription for Trazadone–he told Ellefson he was trying to wean himself off of it (he does not allege that there was a medical order weaning him off of it; it appears that Williams made that decision on his own). ECF No. 1 at 6. Thus, while Ellefson gave Williams a larger dose than Williams wanted, it is not clear if the dose was more than what Williams had been prescribed. Further, Williams told Ellefson that it would give him a stomach ache and sometimes causes stomach bleeding. Williams was not experiencing either of

those symptoms at the time he demanded a nurse. Ellefson and Laxton were not required to immediately act just because Williams told them he could have an adverse reaction in the future. In any event, shortly thereafter, Williams pressed his emergency call button and told Saylor what had happened. Saylor then told Williams that he would look into it and call a nurse. Accordingly, Ellefson and Laxton's failure to immediately respond to Williams' demands to call a nurse did not injure Williams because someone else called a nurse.

Of course, Williams asserts that Saylor did *not* call a nurse. He states that Saylor lied about calling a nurse and instead sent officer Rudie to give him medications that did nothing to address his needs. He points to the conduct report Saylor wrote. ECF No. 16-1 at 1. Saylor states in the report that "[t]he proper steps [were] taken; a shift supervisor and Health Services Staff were contacted about the incident." *Id.* Williams asserts that this is a lie, but he offers no factual allegations from which the court can reasonably infer that is the case. Further, Williams' own allegations undercut this inference. Williams is proceeding against a Jane Doe nurse because Williams alleges that she went home without checking on him after Saylor notified her. Williams cannot have it both ways. Either Saylor did not call the nurse, or he did and the nurse did not follow through. As noted in the screening order, Saylor was entitled to rely on the nurse's statement that she would check on Williams after she completed medication pass. The fact that she did not does not mean Saylor was deliberately indifferent to Williams' condition.

Finally, Williams argues that he should be allowed to proceed against Rudie because he did not call a nurse. He states that a nurse would never have given him medication he already had been prescribed, and the fact that Rudie tried to give it to him demonstrates that Rudie had not talked to health services. Regardless of what Williams had been prescribed, health services could

not have known what medication Williams was keeping in his cell. The fact that Rudie tried to give Williams medication that is commonly used to treat GERD symptoms does not establish that he was not in contact with health services and it certainly does not demonstrate that Rudie was deliberately indifferent to Williams' medical condition. Further, Saylor had already called a nurse, so there was no need for Rudie to also do so. Finally, Rudie's failure to give Williams a container for his stool and spit does not demonstrate deliberate indifference. Rudie is not a medical provider; he was permitted to defer to the medical provider's judgment on whether samples were needed.

In short, while Williams disagrees with the court's analysis, that is an insufficient basis for the court to reconsider its decision. The court will deny the motion for reconsideration.

2. *Motion to Substitute and Motion to Order Service*

Williams also filed a motion to identify the names of the John Doe officers. In the caption of his complaint, Williams named "John Does #1, #2, #3." ECF No. 1. He alleged that a John Doe officer held open the trap through which Fedie sprayed the OC spray. The court dismissed that officer because Williams' allegations against him did not state a claim. Williams also alleged that, after he was moved to a new cell, he banged on his door for help and he "was ignored by 2 John Doe Officers & Ellefson." ECF No. 1 at 15. He later alleged that "3 officers w[ere] standing within at least 10 feet of [him] and ignored [him] . . . Effison [sic] tried to sneak up on the cage to shut the bottom trap . . . ." *Id.* Based on these allegations, the court allowed Williams to proceed against "the two John Doe officers who allegedly ignored Plaintiff's calls for help . . . ." ECF No. 9 at 8.

In his motion, Williams states that he would like to "substitute John Doe defendants who ignored plaintiff's pleas for help after passing out def[e]cating on himself & urinating on himself." ECF No. 14. However, rather than identifying *two* John Doe officers, Williams seeks to identify

*three* John Doe officers.[1] Despite the discrepancy, the court will allow Williams to proceed against the three officers he identifies. Normally the court would direct that an amended complaint be filed that properly names all of the defendants. But given Williams' pro se status and that his lengthy pleading provides sufficient notice to the defendants of their alleged violations, the court will grant his motion to identify the names of the Doe officers. The court directs the clerk to update the caption accordingly.

The court notes that only one unidentified defendant remains: the nurse who allegedly went home at the end of her shift without checking on Williams. After the named defendants respond to Williams' complaint and the court sets discovery and dispositive motion deadlines, Williams will have to use discovery to learn the nurse's name. Once he learns her name, he should promptly notify the court.

**THEREFORE, IT IS ORDERED** that Williams' motion for reconsideration (ECF No. 13) is **DENIED**, his motions to identify the John Doe defendants (ECF Nos. 14, 19) are **GRANTED**, and his motion for order for service (ECF No. 18) is **DENIED as unnecessary**.

The clerk's office will update the docket to reflect that the names of the John Doe officers are: Ben Tierney, T. Jones, and Mandy Bockorny.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint, the screening order, and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Ben Tierney, T. Jones,

---

[1] In his motion, Williams identifies the three Doe officers as Ben Tierney, T. Jones, and Buckanee. He later informed the court that he misspelled Buckanee's name. He states that her name is Mandy Bockorny. ECF No. 19.

and Mandy Bockorny.  **IT IS ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Green Bay, Wisconsin this __21st__ day of November, 2019.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court - WIED